# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 9, 2009          Decided March 13, 2009

No. 07-1472

EASTERN NIAGARA PUBLIC POWER ALLIANCE AND PUBLIC
POWER COALITION, AND THEIR RESPECTIVE INDIVIDUAL
MEMBERS,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NEW YORK POWER AUTHORITY, ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Federal Energy Regulatory Commission

———

*Carolyn Elefant* argued the cause for petitioners. With her on the briefs was *Paul V. Nolan*.

*Robert M. Kennedy Jr.*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Jay T. Ryan* and *Charles R. Sensiba* were on the brief for intervenor Power Authority of the State of New York in support of respondent.

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  From 1958 to 2007, the New York Power Authority operated the Niagara Power Project pursuant to a 50-year license granted by what is now the Federal Energy Regulatory Commission.  In 2007, FERC approved NYPA's relicensing application and granted a new 50-year license.  Several communities in western New York have challenged FERC's 2007 licensing decision as arbitrary and capricious and unsupported by substantial evidence.  We deny their petition because FERC's decision to issue the new license was reasonable and reasonably explained.

I

The Niagara Power Project is a hydroelectric facility about five miles downriver from Niagara Falls.  The project serves as a major source of electricity for upstate New York.

In 1958, the New York Power Authority obtained a 50-year license from the Federal Power Commission (now the Federal Energy Regulatory Commission).  In 2005, as the end of the 50-year license period approached, NYPA filed a relicensing application with FERC.  In 2007, based on review of the application and its own independent study, FERC granted NYPA a new 50-year license.  Although many affected communities in the area supported relicensing, some

towns, cities, and school districts in Niagara County and a group of communities along the Niagara River objected to it and have sought judicial review of FERC's decision.

## II

Federal law directs FERC to issue licenses for the construction, operation, and maintenance of hydroelectric projects on certain U.S. waters. *See* 16 U.S.C. § 797(e). In ruling on licensing applications for hydroelectric facilities like the Niagara Power Project, FERC must consider an array of broad and partially overlapping criteria. For example, under § 797(e), FERC must consider energy conservation, the protection of fish and wildlife, recreational opportunities, and environmental quality. And the statute adds more considerations for relicensing applications: For example, under § 808, FERC must consider such factors as the project's safety, efficiency, and reliability, as well as its effect on the communities it is to serve.

Petitioners do not argue that FERC violated any specific law applicable to licensing decisions. Rather, petitioners contend that FERC, in considering the diverse statutory factors, acted in a manner that was arbitrary and capricious and unsupported by substantial evidence under the Administrative Procedure Act. *See* 5 U.S.C. § 706. In other words, this is a *State Farm* case, not a *Chevron* case. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983); *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 (1984). In reviewing licensing decisions under the APA, our role is "quite limited" and "narrowly circumscribed." *Brady v. FERC*, 416 F.3d 1, 5 (D.C. Cir. 2005); *Dep't of Interior v. FERC*, 952 F.2d 538, 543 (D.C. Cir. 1992).

Petitioners raise five specific concerns, none of which we find persuasive.

*First*, petitioners argue that a 50-year license is too long and inconsistent with agency practice regarding the terms of licenses. But FERC possesses express statutory authority to set license terms between 30 and 50 years. 16 U.S.C. § 808(e). And under its longstanding policy, FERC typically issues longer licenses when license conditions impose greater costs on license-holders. Here, FERC reasonably followed that practice. The project's license conditions will impose annualized costs of about $4.5 million – which suffices to warrant a 50-year license under FERC precedents. *Cf. Power Auth. of N.Y.*, 105 FERC ¶ 61,102, at 61,595 (2003). We find no basis to disturb FERC's judgment regarding the length of the license.

*Second*, petitioners argue that FERC undervalued the project's output in considering the appropriate length of the new license. Because the project operates during both peak times (when rates are high) and off-peak times (when rates are low), FERC projected the value of the project using an *average* of peak and off-peak rates. Petitioners complain that FERC should have tried to better predict the ratio of peak to off-peak operation and that FERC's failure to do so caused it to understate the project's value. Petitioners contend that this alleged mistake influenced FERC's decision to approve a 50-year license term as opposed to a shorter term. But FERC faced a difficult valuation question and answered it in a permissible way given the predictive and inherently speculative nature of the judgment it was required to make. Applying the deferential arbitrary-and-capricious standard, we have no room to overturn that reasoned and reasonable determination.

*Third*, petitioners contend that FERC, as a condition of granting the license, should have required NYPA to mitigate certain adverse environmental impacts allegedly caused by the project. Petitioners focus particularly on shoreline erosion, relying on short excerpts from an Environmental Impact Statement and an expert report. But FERC reasonably concluded that the project's contribution to shoreline erosion would be insignificant. Indeed, both documents cited by petitioners ultimately conclude that the project is not a significant cause of shoreline erosion. To the extent that some limited erosion might occur, moreover, FERC mandated measures to mitigate any such impact. In short, FERC acted entirely reasonably in addressing possible adverse environmental impacts.

*Fourth*, petitioners assert that FERC should have considered the consequences of "off-license" agreements that NYPA reached with interested communities and organizations in the area. Those off-license agreements provided certain benefits to affected groups in the event that FERC granted NYPA's relicensing application – with the apparent goal of fostering regional support for the project. For example, NYPA promised to pay the Tuscarora Nation, a local Indian tribe, $21.8 million if FERC approved NYPA's relicensing application. Petitioners contend that the off-license agreements represented NYPA's not-so-subtle efforts to buy off community opposition. And they argue that the agreements created a disparity between similarly situated communities in New York – some of which obtained such agreements and some of which did not. But the off-license agreements are not related to project operations and are irrelevant to FERC's statutorily mandated assessment of the relicensing application. *See* 16 U.S.C. § 808. Therefore, FERC properly refused to consider the off-license agreements in deciding whether to reissue the license to NYPA.

*Fifth*, petitioners also appear to directly challenge the off-license agreements as unlawful. The source of law on which petitioners are relying for this argument is rather murky. In any event, petitioners lack standing to bring such a claim against FERC. The parties to the off-license agreements were NYPA and certain communities and organizations affected by the project. FERC did not approve those agreements, and FERC does not and cannot control the agreements' terms. Therefore, to the extent petitioners suffered a cognizable injury-in-fact from NYPA's off-license agreements with *other* communities (which is itself a dubious proposition), FERC did not cause that injury; rather, NYPA did. Petitioners thus cannot satisfy the causation element for standing.

* * *

FERC's decision to grant NYPA a new 50-year license for the Niagara Power Project was reasonable and reasonably explained. We accordingly deny the petition for review.

*So ordered.*