
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| THOMAS J. ANDERSEN,<br><br>           Petitioner,<br><br>  v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>           Respondent,<br><br>PPL MONTANA, LLC,<br><br>           Respondent-Intervenor. | No. 12-72266<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

Submitted May 9, 2014[**]
San Francisco, California

Before: D.W. NELSON, LEAVY, and THOMAS, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Thomas Andersen petitions pro se for review of a decision of the Federal Energy Regulatory Commission ("FERC") denying his request for rehearing. We deny the petition for review. Because the parties are familiar with the history of this case, we need not recount it here.

## I

We will not disturb a FERC decision unless it was "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or not in accordance with law." *The Steamboaters v. FERC*, 759 F.2d 1382, 1388 (9th Cir. 1985). "In determining whether an agency's action is arbitrary or capricious, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1097 (9th Cir. 2003) (internal quotation marks omitted). We will uphold FERC's factual findings if they are supported by substantial evidence. 16 U.S.C. § 825*l*(b).

## II

FERC has broad discretion to determine how it will respond to complaints. *See Pac. Gas and Elec. Co. v. FERC*, 746 F.2d 1383, 1386 (9th Cir. 1984) ("We must allow the FERC wide discretion in selecting its own procedures, and must defer to the FERC interpretation of its own rules, unless the interpretation is

2

plainly erroneous." (internal citation omitted)); *Nader v. FCC*, 520 F.2d 182, 195 (D.C. Cir. 1975) ("Similarly, this court has upheld in the strongest terms the discretion of regulatory agencies to control the disposition of their caseload.").

FERC did not abuse its broad discretion by referring Andersen's complaint to the Division of Hydropower Compliance ("DHC") rather than treating it as a formal complaint. FERC has regulatory authority, for good cause, to "prescribe any alternative procedures that it determines to be appropriate." 18 C.F.R. § 385.101(e). FERC has previously recognized and exercised its discretion to decide whether to treat complaints as formal complaints or to refer the complaints to staff. *See Appalachian Power Co.*, 135 FERC ¶ 61,108, at n.4. (2011) (directing DHC to handle a complaint alleging non-compliance with license); *Pac. Gas and Elec. Co.*, 115 FERC ¶ 61,324, at ¶ 62,155-56 (2006) (Kelliher, Chairman, concurring).

Given the extensive prior correspondence between Andersen and FERC, the DHC's expertise in licensing compliance and experience handling Andersen's allegations, the substantial similarity between Andersen's earlier raised issues and his final complaint, and 18 C.F.R. § 385.101(e), FERC's decision was not arbitrary or capricious.

FERC did also not err in (i) denying Andersen's request as untimely, (ii) denying his complaint as a collateral attack, or (iii) declining to address his

3

Request for Rehearing of the January 10, 2013 order. These arguments are moot because FERC subsequently addressed the merits of Andersen's rehearing request and concluded, in a detailed and thorough 21-page decision, that they were substantively without merit.

III

FERC reasonably determined that PPL Montana, LLC ("PPL") was in compliance with the terms of its licence. Contrary to Andersen's assertion that PPL should be required to monitor and control all shoreline erosion on Lake Helena pursuant to Article 402 of PPL's license to operate the Missouri-Madison Project, FERC reasonably concluded that PPL is required by its license to limit only project-induced erosion. Article 402 requires that the plan to monitor and control erosion provide for annual monitoring of active erosion sites "to determine whether or not control measures need to be implemented, and provisions for implementing necessary control measures as their need is identified." As FERC appropriately explained, if Article 402 required PPL to mitigate all shoreline erosion, then this language would be superfluous and contradictory of such an intent. FERC has previously required licensees to mitigate erosion caused only by the licensed project. *See, e.g., E. Niagara Pub. Power Alliance v. FERC*, 558 F.3d 564, 567 (D.C. Cir 2009) (holding that FERC reasonably determined that shoreline

4

erosion was insignificant and that licensee did not need to further mitigate erosion); *FirstLight Hydro Generating Co.*, 126 FERC ¶ 61,025, at ¶ 14 (2009) ("the Commission has limited the responsibility of licensees to controlling and mitigating erosion caused by project operation, and not erosion caused by natural phenomena associated with the presence of the project.").

FERC reasonably determined that the ice heaving on Lake Helena was not project-induced but rather naturally occurring. FERC explained that PPL has limited the water level fluctuations of Lake Helena to one foot, as required by Article 403 of the license, and that ice heaving has nevertheless continued.

IV

FERC did not violate § 1505.3 of the National Environmental Policy Act, as Andersen claims. FERC incorporated the erosion-related recommendation into the renewed license as Article 402, and reasonably concluded that PPL has complied with the license.

Nor did FERC violate the Clean Water Act, 33 U.S.C. § 1344. Andersen argues that the dam's operations cause soil erosion that "fills" Lake Helena and that this "filling" requires a fill permit pursuant to 33 U.S.C. § 1344. However, as we have noted, FERC reasonably determined that the erosion was the result of the

natural phenomenon of ice heaving and was not caused by the operation of the project. Therefore, no fill permit was required.

Andersen alleges that FERC violated the Endangered Species Act, but does not specify how FERC violated the Act. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring "enough facts to state a claim to relief that is plausible on its face.").

We lack jurisdiction to consider Andersen's Fifth Amendment takings claim. 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

**PETITION DENIED.**